**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DAVID TYKURE CARTER**                                    **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:26-cv-335-KHJ-MTP**

**MANAGEMENT & TRAINING CORPORATION ("MTC"),**
**and JOHN DOES 1-100**                                  **DEFENDANTS**

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

***Jury Trial Demanded***

1.   This Complaint is brought by David Tykure Carter, individually, by and through counsel, against Management & Training Corporation ("MTC"), and John Does 1-100.

### JURISDICTION AND VENUE

2.   Jurisdiction is proper in federal court pursuant to 28 U.S.C. §§ 1343, 1331. Original subject matter jurisdiction is invoked under § 1331 since a federal question is raised under 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution. Supplemental and pendent jurisdiction for state law claims related to original jurisdiction claims is raised pursuant to 28 U.S.C. § 1367(a) and *F.R.C.P.* 18(a).

3.   Venue is proper pursuant to 28 U.S.C. § 1391(b), as all substantial acts and/or omissions which caused Plaintiff's injuries occurred in Lauderdale County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

### PARTIES

4.   David T. Carter was, at all times material to this Complaint, an adult incarcerated at East Mississippi Correctional Facility ("EMCF"), in Meridian, Lauderdale County, Mississippi.

5. Management & Training Corporation (hereinafter, "Defendant" or "MTC"), is a national for-profit prison operator incorporated in Delaware with its headquarters in Utah. MTC is the third-largest prison management company in the United States, operating 21 correctional facilities in the country, with 17 state correctional department contracts and 7 federal correctional agency contracts. MTC contracted with Mississippi Department of Corrections ("MDOC") for the management and oversight of its prisons' daily operations, under which it had the responsibility to provide humane care and treatment consistent with all constitutional and ACA standards. At all times material herein, MTC managed East Mississippi Correctional Facility, and the acts, omissions and events giving rise to this Complaint occurred under MTC's management. MTC is subject to the *in personam* jurisdiction of the Court by service of process upon its appointed registered agent, Corporation Service Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

6. John Does 1-100 (hereinafter, "Doe Defendants"), are unknown individuals, and/or entities liable to Plaintiff for the acts and omissions as alleged herein. Currently, Plaintiff is ignorant as to the identities of the Doe Defendants, who are unknown MTC officers, employees, agents, and or servants. Plaintiff will amend this Complaint to allege their true names and that each of the fictitiously named Defendants are responsible in some manner and liable to Plaintiff by reason of negligence, wanton and reckless misconduct, and/or another manner whether alleged herein or not, and by such wrongful conduct, each Defendant proximately caused the injury and damages complained of herein. Plaintiff, upon information and belief, asserts Doe Defendants were officers, agents, servants, and employees of Defendant and acted with permission and consent within the course and scope of said agency and employment.

7.  At all times material, Defendants were acting under the color of the law, statutes, customs, ordinances, and usage of the State of Mississippi, pursuant to its contract with MDOC.

## FACTS

8.  Plaintiff incorporates all allegations in Paragraphs 1 through 7 hereinabove.

9.  On June 29, 2025, at approximately 11:30 p.m., Plaintiff David Carter was asleep in his assigned cell in Housing Unit 4C at East Mississippi Correctional Facility ("EMCF") when another inmate entered his cell and threw a tub of boiling water on him, causing serious injury to the Plaintiff.

10. MTC and MDOC policy require inmates to be always locked inside their cells unless a correctional officer is on the floor or it is designated recreation time. Upon information and belief, Defendants failed to supervise inmates in HU4C on June 29, 2025. Plaintiff was assaulted during designated "rack down" or "lockdown" hours (11:00 p.m. - 5:00 a.m.), during which, no inmate may leave their cell, and cell doors must be locked. HU4C was not secure, and inmates were out of their cells throughout the night, which was an accepted practice by MTC, despite policy to the contrary.

11. It is currently unclear whether the assailant "rigged" his cell door to remain unlocked, or if the locking mechanism on his cell door was functional at all. It is also unclear how the assailant entered Plaintiff's cell, which was supposed to be locked. Inoperable locking mechanisms and "rigging" cell doors to remain unlocked has been a recurring issue at EMCF during MTC's tenure, as detailed below.

12. The assailant's ability to move freely throughout the housing unit demonstrates the lack of any meaningful supervision of inmates by officers, as such would have been readily observable if an officer monitored HU4C as required. The assailant moved freely

throughout the housing unit during lockdown hours, exiting his cell, heating water to boiling temperatures, and entering Plaintiff's cell, without any intervention. Upon information and belief, the inmates in HU4C were not secured and locked in their cells but were freely walking about the housing unit and others' cells throughout the night, which was an accepted practice by MTC.

13. According to the June 29, 2025, logbook, Defendants failed to conduct counts and rounds as required by policy to ensure the well-being of inmates and prevent inmate assaults. If officers conducted counts and security checks, or if officers monitored inmates in HU4C as required, Plaintiff's attack could have been avoided. While the assailant heated the water, an officer could have intervened, and Plaintiff would not have been burned. Alternatively, an officer could have discovered the assailant out of his cell without authorization and secured him inside his cell.

14. According to records, officers [First Name] Parsley and L. Graves (both female and both first names unknown) were assigned to monitor HU4C on June 29, 2025. According to Housing Unit 4 logbook, Parsley took a break around 11:30 p.m., leaving Graves to supervise HU4C alone. Upon information and belief, at the time of Plaintiff's attack, Graves was inside Cell 116 with an inmate affiliated with the Gangster Disciples STG, with whom Graves had an inappropriate relationship. This systemic issue of officers engaging in improper relationships with inmates at EMCF is discussed more fully below.

15. After the assault, Plaintiff suffered immediate and obvious burn injuries, and he was forced to walk to the medical unit by himself while suffering severe injuries.

### *Plaintiff's Burn Injuries and Medical Treatment*

16. As a result of Defendants' failure to adequately supervise inmates, enforce lockdown

procedures, and maintain secure housing conditions, Plaintiff sustained severe scald burns and accompanying damages. Plaintiff was evaluated by EMCF Medical and transported by ambulance to Anderson Hospital in Meridian, Mississippi. Due to the severity of his injuries, Plaintiff was rushed to the Surgical Intensive Care Unit ("SICU") at Baptist Burn, Hand, & Reconstruction Center in Jackson, for specialized burn treatment.

17. Physicians at the burn center diagnosed Plaintiff with scald burns involving approximately 21.5% of his total body surface area, including burns to his face, neck, chest, and upper extremities. Plaintiff required extensive treatment, surgical intervention, and suffered severe pain, permanent scarring, disfigurement, and emotional distress.

18. On July 1, 2025, surgeons performed burn excision and debridement with placement of a skin substitute to remove damaged tissue and begin the wound-healing process. Portions of Plaintiff's burn wounds remained open and required surgical repair.

19. On July 16, 2025, Plaintiff underwent another surgery consisting of tangential excision and split-thickness skin grafting. During this procedure, donor skin was harvested from Plaintiff's left thigh and grafted to burned areas of his neck, chest, and shoulder, including graft sites measuring up to 23 centimeters in length.[1] Operative notes documented that Plaintiff was warned of "scarring and/or permanent deformity."

20. According to medical records, Plaintiff's right ear was irrigated on July 8, 2025, at EMCF, and he was prescribed Ciprofloxacin ear drops for his right ear. It is currently unclear whether Plaintiff suffered hearing loss or the extent of any hearing loss suffered because of this incident. Plaintiff was also referred to mental health for PTSD symptoms on August 4, 2025, as a direct result of the assault.

---

[1] Medical records show skin grafting to Plaintiffs' neck (23 x 10 cm), chest (23 x 5 cm), and left shoulder (11 x 13 cm).

### *History of Understaffing, Compromised Guards, & Inmate Assaults*

21. Plaintiff incorporates all allegations in Paragraphs 1 through 20 hereinabove.

22. For over a decade, lawsuits[2] put Defendants on notice of their failure to protect inmates due to chronic understaffing and lack of basic security functions. The circumstances of prior inmate assaults and deaths at EMCF are virtually **"copy and paste"** of one another, including the Plaintiff's.

23. Plaintiff's assault was foreseeable due to systemic issues at EMCF, and it reflects MTC's ongoing failure to protect inmates from harm by its refusal to sufficiently staff[3] EMCF with trained and supervised guards.[4] MTC's failure to implement basic safety measures, such as locking mechanisms or functional surveillance cameras, along with its chronic understaffing and lack of adequate training and supervision of officers, resulted in harm to inmates, including the Plaintiff.

24. Despite years of instability evidenced by high rates of assaults and deaths, lockdowns, contraband, and gang networking, Defendants continued to operate EMCF under such

---

[2] *See Dockery, et. al v. Epps, et. al*, S.D. Miss., No. 3:13-cv-326-TSL-JMR; *Gipson v. Management & Training Corporation et al*, S.D. Miss., No. 3:16-cv-00624-DPJ-FKB; *Buckley et al v. Management & Training Corporation et al*, S.D. Miss., No. 3:22-cv-00379-KHJ-MTP; *Marsh v. Management & Training Corporation et al*, S.D. Miss., 3:24-cv-00339-TSL-MTP; *Gregory Rivers v. Management & Training Corporation et al.*, S.D. Miss., 3:25-cv-156-CWR-LGI; *Jamela Carthan et al v. Management & Training Corporation et al.*, S.D. Miss. 3:25-cv-163-CWR-ASH.. See also *Walker v. Management & Training Corporation et al*, S.D. Miss., No. 5:14-cv-00098-DCB-MTP; *Bell v. Management & Training Corporation et al*, S.D. Miss., No. 5:16-cv-00039-DCB-MTP; *Hernandez v. Management & Training Corporation et al*, S.D. Miss., No. 5:16-cv-000057-KS-MTP; *Mauk v. Management & Training Corporation et al*, S.D. Miss., No. 5:18-cv-000068-DCB-MTP.

[3] Understaffing at MTC's prisons have been an ongoing issue for years. In November 2022, Mississippi State Auditor Shad White announced that his office was demanding nearly two million ($2,000,000) dollars from MTC for failing to have adequate staff on duty at Marshall County Correctional Facility. The Marshall Project published that MTC should have repaid $950,000 for vacant positions and unfilled shifts at EMCF between 2013 and 2019. https://www.themarshallproject.org/2020/12/09/no-show-prison-workers-cost-mississippi-taxpayers-millions. https://www.mississippifreepress.org/29163/, accessed April 14, 2026.

[4] On April 13, 2026, State Auditor Shad White announced that his office again was demanding over $7.4 million from MTC for failure to staff its prisons in accordance with its contract with the State. *See* https://www.wjtv.com/news/state/state-auditor-demands-7-4m-from-private-prison-company/, accessed 04/14/26; *See also* https://www.osa.ms.gov/news/auditor-demands-private-prison-company-repay-74-million-taxpayers, and https://www.deseret.com/utah/2023/9/21/23882984/utah-private-prison-company-mississippi-mtc-management-and-training/, accessed 04/14/26.

dangerous conditions, showcasing a deliberate indifference to the risk of harm and death to inmates. Defendants' *de facto* policies of understaffing EMCF with an insufficient number of adequately trained and/or supervised correctional officers directly resulted in harm to inmates, specifically the Plaintiff.

25. In 2024, Edward Boyd was killed at EMCF in HU6B in plain view of surveillance cameras. This incident put MTC on heightened notice of chronic understaffing, violence, contraband, dysfunctional security mechanisms, and inappropriate relationships among staff and inmates at EMCF. MTC made little to no changes, directly resulting in Plaintiff's assault on June 29, 2025.

26. During depositions in the Boyd case, a former EMCF officer testified that he alerted superiors of staff shortages and security inadequacies, but his concerns fell upon deaf ears. *"I wasn't a female* so everything I was saying was in one ear and out the other...I feel like I told everybody I possibly could."[5] He testified that popping locks and dysfunctional security mechanisms were "very common," stating:

> That was always one of my biggest fears...I said something and *their biggest excuse was it will cost too much money to come in here and fix all these doors*...Basically we've got to work three times as harder and be aware three times as much because y'all don't want to pay for these doors to get fixed.[6]

27. The former officer testified regarding compromised guards in inappropriate relations with inmates, worsening the already-violent atmosphere at EMCF. At the time of Boyd's murder, *both* female officers on duty had relationships with inmates, which caused and/or contributed to Boyd's death. Officer [Duncan] admitted to improper relationships with

---

[5] *Carthan v. Management & Training Corporation, et al.*, S.D. Miss. No. 3:25-cv-163-CWR-ASH, Deposition of D.K., February 13, 2026, p.20 lines 19-23 (emphasis added).
[6] *Carthan v. MTC et al.*, Deposition of D.K., February 13, 2026, pp.13-14 (emphasis added).

inmates; another female officer [Bell] was pregnant with the assailant's [inmate Anderson] child at the time of Boyd's murder. As a result of MTC condoning such misconduct and behaviors, the pattern persisted, and on June 29, 2025, the Plaintiff was attacked in his cell, causing severe injuries. As previously stated, the officer assigned to HU4C [Graves] was in an inappropriate relationship with an inmate housed in HU4C Cell 116. At the time of Plaintiff's attack, Graves was inside Cell 116 with her "boyfriend," which directly caused and/or contributed to Plaintiff's attack and injuries.

28. MTC has condoned inappropriate relationships between staff and inmates, which directly causes and/or contributes to inmate assaults and deaths. According to MDOC Investigator Townsend's deposition testimony in Boyd's case, "several inmates...knew Bell and [inmate] Anderson had a sexual relationship."[7] During officers' interviews after Boyd's death, then-officer Duncan (female) stated "most everyone here has a boyfriend," and a Lieutenant, still employed by MTC, stated he had knowledge about Bell and Anderson's relationship.[8] Despite knowledge of inappropriate relationships between staff and inmates and knowledge of the risk of harm associated therewith, MTC accepted and allowed such behavior by failing to discipline and/or retrain officers who engaged in such relationships.[9]

29. One decade *prior* to Boyd's death, in 2014, Charles McGrew was murdered by his cellmate, putting Defendants on notice that failure to conduct required security checks resulted in harm and death to inmates. McGrew's murder occurred while a class action lawsuit against EMCF (*Dockery*) was ongoing, and it revealed Defendant's persistent and systemic-wide negligence and deliberate indifference to the safety of inmates in its

---

[7] *Carthan v. MTC et al.*, Deposition of Sandy Townsend 02/19/2026, p.18, lines 13-15.

[8] *Carthan v. MTC et al.*, Deposition of Sandy Townsend 02/19/2026, p.18 lines 21-24.

[9] *Carthan v. MTC et al.*, Deposition of Sandy Townsend 02/19/2026, pp.33-34.

custody.[10] Despite this knowledge, MTC made little to no change to protect inmates from harm.

30. In 2017, depositions in McGrew's case highlighted MTC's lack of basic security functions and its chronic understaffing, which resulted in harm/death to inmates. MTC's then-Regional Vice President Marjorie Brown acknowledged in her deposition testimony that guards must conduct security checks approximately every 30 minutes to ensure inmates were safe, alive, and well. Stephen Huffman (MTC's expert in *McGrew*) testified that inmate altercations happen any time, especially in cells, thus the importance of counts and checks. Defendant's own expert *agreed* that MTC acted with deliberate indifference by not requiring officers to conduct rounds and security checks. In thirty-seven (37) years of working in corrections, Huffman had not seen a facility continue to be noncompliant in conducting counts for such a long period of time.[11]

31. Proper supervision of inmates to prevent and/or protect them from harm is impossible without sufficient staff. Defendants consistently understaffed EMCF with poorly trained and unsupervised officers, resulting in negligent practices that endangered inmates. Defendants' *de facto* policy of understaffing EMCF with inadequately trained and unsupervised guards was negligent and grossly negligent and was implemented with deliberate indifference to the inmates, specifically the Plaintiff.

### *Knowledge of Risk of Harm*

32. Plaintiff incorporates all allegations in Paragraphs 1 through 31 hereinabove.

33. Defendants knew or should have known that Plaintiff was at risk of harm due to MTC's

---

[10] *Sandra Fay Gipson, as Administratrix of, and Personal Representative on Behalf of the Wrongful Death Beneficiaries of the Estate of Charles Elliot McGrew, Deceased v. Management & Training Corporation and John and Jane Does 1-100*, S.D. Miss., 3:16-cv-624-DPJ-FKB.

[11] *Gipson v. MTC et al*, Deposition of Stephen J. Huffman, July 28, 2017, Vol. II pp. 38-39.

documented history of violence, chronic understaffing, dysfunctional locking mechanisms on cell doors, and history of compromised correctional officers. Defendants failed to protect Plaintiff from the known and obvious risk of harm, failed to train and supervise staff to manage inmate assaults, and subjected Plaintiff to cruel and unusual punishment, resulting in Plaintiff's injuries and damages.

34.    Plaintiff's attack was **not** an isolated or random incident. Most inmate assaults or deaths at EMCF have recurring issues known to result in harm to inmates: the facility was understaffed; the guards were compromised; security checks were not done or were improper; cell doors do not lock or can be "rigged;" security mechanisms and surveillance cameras are dysfunctional; medical care is delayed; and incidents lack adequate investigation and/or corrective action to avoid future occurrences.

35.    MTC's documented history of hiring officers who become involved with inmates has resulted in compromised guards who allow, facilitate, and/or turn a blind eye to inmate assaults. Defendants' deliberate indifference to the safety and well-being of inmates at EMCF, specifically Plaintiff, directly resulted in Plaintiff's injuries, which were foreseeable and preventable.

36.    Defendants were subjectively aware of a substantial risk of harm to Plaintiff and disregarded that risk. Defendants failed to take the necessary precautions and safety measures to protect Plaintiff from harm and created a breeding ground for violence. Defendants' actions and inactions constitute negligence, gross negligence, and deliberate indifference to the safety and well-being of inmates at EMCF, specifically Plaintiff.

## § 1983 CAUSES OF ACTION

37.    Plaintiff incorporates herein all allegations set forth above in Paragraphs 1 through 36.

38. Defendants knew or should have known that Plaintiff's safety and well-being was at risk due to its chronic understaffing, dysfunctional security mechanisms, history of inmate violence, contraband flow, gang networking, and compromised officers. Despite this awareness, Defendants failed to protect Plaintiff from harm. Such actions were negligent, grossly negligent, and with a deliberate indifference to the safety of the inmates, specifically the Plaintiff.

39. Instead of protecting Plaintiff from harm, MTC housed an inmate with a history of assaulting other inmates with boiling water in a zone where locks were nonoperational, video surveillance systems were dysfunctional, and correctional officers did not monitor and/or were compromised and involved with other inmates, directly resulting in Plaintiff's assault and damages.

40. By and through Defendants' deliberate indifference to the safety and well-being of the Plaintiff on June 29, 2025, and the establishment of customs, policies and practices which created unconstitutional conditions of confinement, Defendants violated the clearly established constitutional rights of the Plaintiff, including but not limited to:

   a. Right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments;

   b. Right not to be deprived of liberty without due process of law;

   c. Right to be safe and protected from injuries while in Defendants' custody;

   d. Right to be protected by the correctional officers while under their control;

   e. Right to be free from excessive and unreasonable force; and

   f. Right to timely and adequate medical treatment.

41. Defendant John Does 1-100's actions were not objectively reasonable. At all times, Doe Defendants were acting under the color of state law.

42. As a direct and foreseeable result of Doe Defendant 1-100's actions, Plaintiff suffered damages including but not limited to physical injuries, emotional distress, mental anguish, and pain and suffering.

43. Defendant MTC, by and through Doe Defendants in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of Plaintiff's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Plaintiff and other EMCF inmates. MTC maintained and operated EMCF in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of inmates in every respect. These policies created unconstitutional conditions of confinement.

44. Said unwritten policies, customs, and practices include but are not limited to:

   a. Failing to adequately staff EMCF with trained and qualified guards assigned to the housing units and allowing EMCF to be understaffed.

   b. Inadequate and improper procedures and practices in screening, hiring, training, supervising, and disciplining officers who practice, condone, or use excessive force upon EMCF inmates, including the Plaintiff, in violation of his constitutional rights;

   c. Inadequate and improper procedures, policies, and practices for investigating improper activities by correctional officers either through offender complaints of misconduct or through internally initiated complaints or investigations which permit guards to aid and abet gang members housed at EMCF;

   d. Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against correctional officers in need of re-training, corrective measure, reassignment or other non-disciplinary actions, through a positive or early warning system designed to prevent violations of inmates' rights;

   e. Condoning and allowing EMCF correctional officers to allow and/or facilitate inmate assaults;

f.  Failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at EMCF;

g.  Allowing inmates to compromise cell doors and permitting inmates to leave their cells any time, even when they are supposed to be on lockdown, which contributed to the atmosphere of violence which existed on the dates of Plaintiff's assaults;

h.  Failing to make proper rounds/cell checks within the established guidelines to ensure inmates' safety;

i.  Improper classification and housing of inmates including the failure to separate inmates with mental health history and documented assaults from others;

j.  Regularly denying and delaying access to timely and adequate medical care and treatment, including corrective surgeries ordered by outside specialists;

k.  Improper and inappropriate relationships and/or fraternization among correctional officers and inmates, which contributes to the contraband flow and violence; and

l.  Failing to preserve evidence including surveillance video footage depicting violent assaults and failing to document and investigate incidents of inmate assaults, such as the attack on the Plaintiff.

45.  Upon information and belief, MTC, through Doe Defendants 1-100, had prior knowledge that Plaintiff was at risk of harm, or that an attack was imminent, yet Defendants chose to take no action to prevent the assault. Defendants were deliberately indifferent to the safety of EMCF inmates, including Plaintiff. As a direct and foreseeable result of actions and inactions of Defendants MTC and Does 1-100 to take necessary steps to prevent the assault, Plaintiff suffered the harms alleged herein.

46.  Officers, including Doe Defendants, acted, or failed to act, in accordance with official policies, customs and practices of MTC, or at the direction of and with approval of these officials in depriving Plaintiff of his rights described herein. The policies, practices and customs were moving forces in Defendant and its employees' action and inaction, with deliberate indifference to Plaintiff's constitutional rights, welfare, and safety.

47.    As a direct and foreseeable result of Defendants' actions, Plaintiff suffered damages including but not limited to, severe physical injuries, permanent scarring and deformity, delayed medical treatment, pain and suffering, and emotional distress.

## RATIFICATION

48.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 47 hereinabove.

49.    MTC has a documented history of employing compromised correctional officers. In the past, inmates essentially held their own "job fairs," recruiting gang affiliated officers. "All they had to do was find a young girl or young guy on Facebook and recruit them. If they didn't have a criminal record, they could get a job. They'd come in, bringing in contraband and stuff, and then get fired or leave."[12] Gang members even paid for compromised guards to live nearby.[13] According to Naidow's 2017 deposition testimony:

> Q:    Did you ever – were you ever able to substantiate that the inmates were recruiting correctional officers?
> A:    We did have a couple incidents of officers that were caught up and were found living in some—there's some apartments right down from—right down from the prison in Meridian that were gang affiliated.

> *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Matthew Naidow, August 4, 2017, p.60 lines 11-18.

50.    Defendants wholly failed to document or investigate the incident. When asked for records related to Plaintiff's incident, on October 31, 2025, Deputy Warden Smith stated that he had "*no information or incident involving David Carter.*" (emphasis added).

51.    According to MTC's "summary" of the incident, no corrective action was taken as a result of Plaintiff's attack. MTC's summary noted the following:

   a.    No internal affairs investigation was completed regarding this incident,
   b.    Video footage was not preserved by Investigations at the time of the incident, and

---

[12] *Gipson v. MTC et al*, Deposition of Matthew Naidow, August 4, 2017, p.59 lines 15-25.
[13] *Gipson v. MTC et al*, Deposition of Matthew Naidow, August 4, 2017, pp.59-61.

c.  No outside agency was notified of this incident other than Mississippi Department of Corrections (Yolanda Austin) and medical providers.[14]

52.  Upon information and belief, Investigations was not alerted to the incident involving Plaintiff, thus no timely investigation was conducted. Defendants and their policymakers ratified the attack and failure to adequately document and/or investigate the incident by failing to discipline and/or retrain any officers and failing to secure cell doors which were either "rigged" or otherwise inoperable, despite having knowledge of the assault and Plaintiff's injuries.

## NEGLIGENCE/GROSS NEGLIGENCE

53.  Plaintiff incorporates all allegations set forth in Paragraphs 1 through 52 hereinabove.

54.  At all times relevant, Defendant and Doe Defendants, as their employees, had a duty to exercise ordinary care for the prisoners at EMCF, including Plaintiff. MTC and Doe Defendants breached that duty by failing to use the ordinary care that a reasonable person would use to avoid and prevent injury to others, *i.e.* in the case *sub judice*, by failing to monitor inmates during lockdown hours, allowing inmates to leave their assigned cells when they should be secured, allowing inmates to enter others' cells without authorization, and by failing to monitor inmates and conduct the required security rounds and inmate counts according to policy – the failure of which led directly to the damages sustained by Plaintiff. This breach was so egregious as to amount to gross negligence.

55.  Defendants and its employees were also negligent by failing to monitor the inmates in Housing Unit 4C on a direct supervision basis and were negligent by failing to monitor the

---

[14] Yolanda Austin was the Mississippi Department of Corrections ("MDOC") Contract Monitor / Compliance Officer at EMCF prior to June 30, 2025. On or about June 30, 2025, Yolanda Austin along with Major Demetrius Marshall and Coach Billy Davis were terminated and escorted off the grounds of EMCF by MDOC CID officers after an internal investigation resulted in allegations of extortion, smuggling contraband, racketeering, bribery, and other offenses which would put the entire population of inmates at EMCF at risk of harm.

Plaintiff's cell and/or Housing Unit on a routine basis and failure to conduct security checks as required. Defendants failed to provide appropriate, reasonable and necessary supervision to avoid and prevent injury to inmates, specifically the Plaintiff. Defendants understaffed the EMCF and did not manage the inmate population and violent atmosphere with adequate or trained and qualified guards. As a direct result, Plaintiff suffered damages.

56. The planning and heating of the water was not quick and should have been noticed if any guards were supervising the inmates. Defendants and their employees' actions and inactions constitute negligence, gross negligence, and deliberate indifference to the safety and well-being of inmates, specifically the Plaintiff.

57. If Defendants had performed security checks in accordance with proper procedures, Plaintiff's attack would not have occurred. Had Defendants and its employees properly supervised inmates at EMCF, Plaintiff's assault would have been prevented or interrupted, and Plaintiff would not have suffered serious and permanent injuries.

58. Plaintiff's assaults and injuries were the reasonably foreseeable outcome of Defendants and their employees' acts and omissions. These acts and/or omissions were substantial factors in bringing about the Plaintiff's injuries and accompanying damage suffered.

**NEGLIGENT AND GROSSLY NEGLIGENT HIRING AND SUPERVISION**

59. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 58 hereinabove.

60. Plaintiff alleges that Defendant MTC negligently, or with gross negligence, hired, supervised and retained its employees and agents, inter alia, by (a) failing to care for and ensure Plaintiff's health, safety, and well-being while at EMCF; (b) failing to properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and (c) was otherwise negligent or grossly negligent in their care and

treatment of the Plaintiff, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR

61. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 60 hereinabove.

62. Defendant MTC and Doe Defendants acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent Plaintiff's assaults. At all times relevant, Defendants owed a duty to Plaintiff to ensure his health, safety, and well-being, and Defendants breached this duty. The actions and inactions of Defendant and/or Doe Defendants led directly to the injuries suffered by the Plaintiff. MTC, as Doe Defendants' employers, are liable for their employees' actions which were undertaken during the course and scope of their employment.

## PUNITIVE DAMAGES

63. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 62 hereinabove.

64. Defendant MTC and Doe Defendants 1-100 acted in complete disregard for the Plaintiff's safety by acting in a grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

65. Defendants' actions exhibited gross negligence and direct disregard for the safety of Plaintiff. Punitive damages should be awarded against Defendants. Defendants' tortious actions caused Plaintiff's physical injuries, emotional distress, mental anguish, and pain and suffering.

## PRAYER FOR RELIEF

Plaintiff requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following relief:

A.     Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

B.     Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

C.     Payment of medical expenses;

D.     Reasonable attorney's fees and all costs of this court;

E.     Pre and post judgment interest; and

F.     Such other general and specific relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 12th day of May 2026.

DAVID T. CARTER

BY: _____

COURTNEY D. SANDERS

MERRIDA (BUDDY) COXWELL (MB# 7782)
COURTNEY D. SANDERS (MB# 106444)
**COXWELL & ASSOCIATES, PLLC**
500 N. State St.
Jackson, Mississippi 39201
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
merridac@coxwelllaw.com
courtneys@coxwelllaw.com

CHARLES (CHUCK) MULLINS (MB# 9821)
MULLINS LAW FIRM
1146 Lyncrest Avenue
Jackson, Mississippi 39202
Telephone: (769) 216-8373
chuck@chuckmullinslaw.com

*Attorneys for Plaintiff*